STATE OF CONNECTICUT *v.* BENNY AVERSA
(11539)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued October 10—decision released December 3, 1985

*Eugene J. Riccio,* public defender, with whom, on the brief, was *Michael D. Neubert,* assistant public defender, for the appellant (defendant).

*Robert A. Lacobelle,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SANTANIELLO, J. After a jury trial, the defendant, Benny Aversa, was convicted of attempted robbery in the first degree in violation of General Statutes §§ 53a-134 (a) and 53a-49. He was sentenced to a term of not less than eight nor more than sixteen years.

The jury could reasonably have found the following facts: The defendant and a male companion entered a

liquor store in Stamford at about 4 p.m. on September 29, 1977. The store was located on Prospect Street, approximately 300 yards from the town's police station. The defendant was in the store for around ten or twelve minutes. During that time, the defendant and his friend bought some beer and waited for the other customers in the store to leave. When they were alone with the store owner, the defendant pulled a gun from his pocket. Upon seeing the gun, the store owner fled to an adjacent donut shop. The defendant and his companion also ran from the store and headed down Prospect Street toward their car.

At the donut shop, the store owner met Officer Joseph Gentle of the Stamford police department and told him what had happened. He told the officer that both suspects were white males and relatively thin, that one had long hair and the other short, and that the individual with the long hair wore a blue pullover jacket or shirt. He also had enough time to point out the two men to the officer as they ran down Prospect Street toward North Street. Gentle immediately radioed to police headquarters the information he had obtained from the store owner. He told headquarters that there had been an attempted holdup, that two white males were involved, one wearing a blue windbreaker "or something like that," and that they had been observed running down Prospect Street onto North Street.

Sergeant Clifton Wood, who was at police headquarters, heard Gentle's transmission and immediately went outside to see if he could find the two suspects. Wood crossed Prospect Street and went onto North Street. He observed the defendant and his companion pull out of a parking lot onto North Street in a blue-gray Thunderbird. Only a couple of minutes had elapsed between the broadcast of Gentle's report and Wood's observation of the car. The parking lot was approximately 100 yards from the site of the attempted holdup. Wood

noticed that the two men in the car appeared to match the description he had heard. Neither man had on a blue shirt or sweatshirt, but rather both men had on only white tee shirts. At the time, it seemed odd to Wood that these men were wearing only tee shirts in rather brisk fall weather. It also seemed suspicious to him that the car was moving at a very slow speed and that the two men looked at the officer out of the corners of their eyes.

The sergeant was joined by another officer and they decided to pull the car over. While the other officer was asking the driver for identification, Wood peered into the back seat of the car and observed in plain view a blue sweatshirt, a maroon windbreaker and a white sweater. Once the articles of clothing were noticed, the two men were ordered from the car and given a pat-down search. They were held there for approximately three minutes until the store owner came and identified them as the two men who had attempted to rob him. Fifteen to twenty minutes had elapsed between the attempted robbery and the identification. The defendant and his companion were then formally arrested.

The suspects were transported to the police station by car. While in transit, both men were read their *Miranda*[1] rights, but they were asked no questions. After they arrived at the station, they were booked and brought to the detective bureau. There they were asked by Detective Joseph Falzetti if they had been in the liquor store. The defendant responded, "no." The detective then asked: "You mean to tell me that you weren't in the liquor store?" The defendant replied: "Okay, we were standing in front." These were the only questions asked at that time. The questioning was completed within one-half hour of the arrest.

---

[1] *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Later that afternoon, the defendant was brought back into the detective bureau from his cell. Detective James Washington read the defendant his *Miranda* rights again and the defendant indicated that he understood those rights. The defendant was not asked to sign any rights form or waiver. The detective asked the defendant a series of questions about the attempted robbery. The defendant admitted that he had been in the liquor store but denied that he had had a gun or that he had tried to rob the owner.

At trial, the state introduced as evidence the clothing found in the defendant's car and the defendant's statements to the police after he was arrested. The store owner also made an in-court identification of the defendant. The defendant had filed pretrial motions challenging the admissibility of this evidence on fourth and fifth amendment grounds, but the court ruled the evidence admissible and denied the defendant's motions.

On appeal, the defendant claims the trial court erred in denying his pretrial motions because: (1) the clothing found in the car, the store owner's in-court identification and the defendant's statements to the police were fruits of an illegal seizure under the fourth amendment; (2) the store owner's in-court identification was the product of an impermissibly suggestive police procedure; and (3) his statements to the police were obtained by questioning which violated his fifth amendment rights. We find no error.[2]

---

[2] We note at the outset that the defendant objected to the introduction of the clothing, the identification and the statements only in pretrial motions. No objections were made during the course of the trial. Ordinarily such a failure would prevent us from reviewing the claims of error. See Practice Book §§ 3063 and 288. Here, however, the defendant has made out colorable claims involving fundamental constitutional rights implicating his right to a fair trial. Claims of this nature constitute an exceptional circumstance where we will undertake review despite the failure to raise the claims during trial. See *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

## I

The defendant first claims that his detention by the police was unlawful under the fourth amendment and, as a result, the evidence obtained from the plain view search, the later in-court identification of him by the store owner and his statement to the police were inadmissible as "fruits of the poisonous tree." See *United States* v. *Crews*, 445 U.S. 463, 472–77, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Wong Sun* v. *United States*, 371 U.S. 471, 484–86, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). He argues that, as required by the doctrine of *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the police lacked a reasonable, articulable suspicion to stop him under the circumstances. He also claims that even if the original stop had been legal, his further detention by the police constituted an arrest and a "seizure" under the fourth amendment for which the police lacked probable cause. We find that the initial stop of the car was legal under *Terry* v. *Ohio*, supra, and that once the police saw the blue sweatshirt in the rear seat of the defendant's car, they were justified in further detaining the defendant.

It is well established that police may momentarily detain an individual for investigative purposes if the police have "a 'reasonable and articulable' suspicion that [he has] engaged in criminal activity. *Reid* v. *Georgia*, 448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980); *Terry* v. *Ohio*, [supra]." *State* v. *Carter*, 189 Conn. 611, 617, 458 A.2d 369 (1983). What constitutes a reasonable and articulable suspicion depends on the "totality of the circumstances." *United States* v. *Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). "The test to be applied, however, is an objective one: 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action

taken was appropriate?' *Terry* v. *Ohio,* supra, 22. In justifying the particular intrusion 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* supra, 21; see *United States* v. *Brignoni-Ponce,* [422 U.S. 873, 884, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)]; *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973). While general investigation may be based upon suspicion and guesswork, a police officer's decision to restrain a person's liberty or the use of his property must be made on more than a mere hunch. See *Delaware* v. *Prouse,* 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *Terry* v. *Ohio,* supra, 22; *Beck* v. *Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *State* v. *Watson,* supra, 585." *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

In the totality of the circumstances, the police here were justified in stopping the defendant's car. Wood testified that there were a number of facts which gave rise to the police suspicion. First, the defendant was stopped within a few hundred yards of the place where the crime took place. Second, the defendant was stopped within fifteen to twenty minutes after the attempted robbery. "Proximity in time and place of the stop to the crime is highly significant" in the determination of whether the police action was reasonable. *State* v. *Carter,* supra, 616–17; 3 LaFave, Search and Seizure § 9.3 (d). Third, the defendant and his companion generally fit the description given the police. Also, the facts that the suspects were wearing only tee shirts on a cool day, that they looked at the observing officer nervously and that they were driving at a very slow rate of speed all added to the police suspicion. Under

the circumstances we cannot say that the police action in stopping the defendant was inappropriate or unreasonable under the fourth amendment.

The defendant goes on to argue, however, that even if the original stop was legal, his further detention by the police was unreasonable because the police lacked probable cause. We disagree. The police were not required to have probable cause in order briefly to detain the defendant after the initial stop. " 'The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. . . . If . . . the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.' *State* v. *Watson,* [supra, 585]." *State* v. *Carter,* supra, 618; see also *State* v. *Braxton,* 196 Conn. 685, 689–90, 495 A.2d 273 (1985). In assessing whether the detention is too long in duration to be justified as an investigative stop, we must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States* v. *Sharpe,* 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

We are convinced that the police acted lawfully in briefly holding the defendant until the store owner positively identified him. The extension of the initial stop was justified once the police found the blue sweatshirt in the back of the defendant's car. The sweatshirt was observed by Wood immediately after he and the other officer stopped the car. We have already said that the original stop was reasonable. The sweatshirt was in plain view on the rear seat and therefore legally found. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982). Since

the suspects met the description of them given by the store owner and the police were able to infer from all the circumstances that the suspects had probably taken off their outer garments to avoid being spotted, the police had reason to detain them until the victim arrived and identified them. Further, the police detained the suspects for only three minutes and acted diligently "to confirm or dispel their suspicions quickly." *United States* v. *Sharpe,* supra.

There is no basis for the defendant's claim that his fourth amendment rights were violated by the police action.

## II

The defendant next claims that even if the in-court identification was not the "fruit" of an illegal seizure, the identification was still inadmissible because it was based on an impermissibly suggestive police procedure. Specifically, he argues that the store owner's in-court identification was rendered unreliable by the suggestive nature of the identification made at the time of the arrest. Although we agree that the out-of-court identification was based on a suggestive procedure, we find that the later in-court identification was nevertheless reliable and was therefore admissible.

" 'A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure.' " *State* v. *Hinton,* 196 Conn. 289, 293, 493 A.2d 836 (1985); *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). "The determination whether an identification procedure has violated a defendant's due process rights must be made on an ad hoc basis. The inquiry is two-pronged: ' "first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification

was nevertheless reliable based on examination of the 'totality of the circumstances.' " ' *State* v. *Hinton,* supra, 292–93, quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985)." *State* v. *Parker,* 197 Conn. 595, 598, 500 A.2d 551 (1985). "The constitutional test for reliability requires the trial court to consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault,* supra, 373–74." *State* v. *Hinton,* supra, 295–96.

We recognize that almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively "suggestive," but not all suggestive confrontations are unnecessary. *State* v. *Hamele,* 188 Conn. 372, 376–77, 449 A.2d 1020 (1982); *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976). There are a number of circumstances which might justify an immediate viewing of the suspect.[3] We need not decide in this case whether the circumstances were sufficiently exigent to make the confrontation between the witness and the suspect necessary, however, because we are convinced that the identification made by the victim was reliable under the totality of the circumstances. The store owner had the opportunity to view the defendant for

---

[3] Circumstances may justify an immediate viewing by the victim because prompt on-the-scene confrontations are more likely to be accurate and allow an innocent party to be quickly released if there is no positive identification. *State* v. *Hamele,* 188 Conn. 372, 376–77, 449 A.2d 1020 (1982); *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976); *State* v. *Mallette,* 159 Conn. 143, 149, 267 A.2d 438 (1970).

ten to fifteen minutes at the time of the crime. The store owner engaged him in a face-to-face conversation and was able to view the defendant without obstruction. The store owner's prior description generally matched the appearance of the defendant, and he exhibited a high degree of certainty that the defendant was the person who pulled the gun on him in the store. Also, the store owner identified the defendant within fifteen to twenty minutes of the crime.

## III

Finally, the defendant claims that even if the statements made to the police after his arrest were not the "fruits" of an unconstitutional seizure, the statements were taken in violation of his fifth amendment rights and were therefore inadmissible. He argues that the state did not meet its burden of proving that he knowingly and voluntarily waived his right against self-incrimination. See *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We conclude that the trial court did not err in refusing to suppress the statements.

In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. *State* v. *Alfonso,* 195 Conn. 624, 628, 490 A.2d 75 (1985); *State* v. *Perry,* 195 Conn. 505, 516 n.8, 488 A.2d 1256 (1985). "Waiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood. *State* v. *Wilson,* [183 Conn. 280, 284, 439 A.2d 330 (1981)]; see *United States ex rel. Abubake* v. *Redman,* 521 F. Sup. 963, 975 (D. Del. 1981). Nor is it conclusively rebutted by refusal to sign a form waiving *Miranda* rights; *North Carolina* v. *Butler,* [441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)]; *State* v. *Derrico,* [181 Conn. 151, 163–64, 434 A.2d 356,

cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)] . . . . In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that 'waiver can be clearly inferred from the actions and words of the person interrogated.' *North Carolina* v. *Butler,* supra, 373. Although the issue is therefore ultimately factual, our usual deference to factfinding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. *State* v. *Frazier,* [185 Conn. 211, 219, 440 A.2d 916 (1981)]." *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); *State* v. *Pellegrino,* 194 Conn. 279, 288–89, 480 A.2d 537 (1984).

Our examination of the record in this case reveals that the defendant knowingly and voluntarily waived his right to remain silent. Although there was no express waiver, the defendant's willingness to speak and his course of conduct after being given his *Miranda* warnings constituted "explicit affirmative act[s] evidencing waiver." *State* v. *Harris,* supra, 580. The defendant was read his *Miranda* rights within one-half hour of his first set of statements to the police. The defendant was read his *Miranda* rights again immediately before he gave his second set of statements. On both occasions he said that he understood what was told him. After he was read his rights, the defendant never expressed any desire to remain silent or that the officers stop asking him questions. Instead, the defendant initiated conversation with the officers and freely responded to questions. His answers to questions were not monosyllabic responses of "yes" or "no," but were given in narrative form. The defendant also laughed and joked and said that if this arrest had taken place

in the Bronx, the police would have been "blown away." His overall attitude and conduct exhibited a street-wise familiarity with police procedures, and we are confident that he knew that he did not have to say anything but chose to talk nonetheless.[4]

There were also no allegations of facts which cast doubt upon the knowing and voluntary nature of the waiver. The defendant never denied that he understood the warnings, nor did he claim a lack of familiarity with criminal proceedings. "While the defendant had no obligation to testify himself or to offer testimony, a court cannot supply evidence that is lacking. *United States* v. *Frazier,* 476 F.2d 891, 897 (D.C. Cir. 1973); *United States* v. *Hayes,* 385 F.2d 375, 378 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S. Ct. 1250, 20 L. Ed. 2d 106 (1968)." *State* v. *Harris,* supra, 581. The interrogation was not lengthy or preceded by an incommunicado interrogation; see *Miranda* v. *Arizona,* supra, 476; there was no proof "that the defendant lacked education; *Davis* v. *North Carolina,* 384 U.S. 737, 742, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966); that the defendant exhibited weakness of will or mind; *Fikes* v. *Alabama,* 352 U.S. 191, 196–97, 77 S. Ct. 281, 1 L. Ed. 2d 246, reh. denied, 352 U.S. 1019, 77 S. Ct. 553, 1 L. Ed. 2d 561 (1957); or that there were hostilities incident to the defendant's arrest or custodial interrogation. *McDonald* v. *Lucas,* 677 F.2d 518, 519 (5th Cir. 1982)." *State* v. *Harris,* supra, 581–82; see also *State* v. *Thompson,* 5 Conn. App. 157, 168, 497 A.2d 423 (1985).

Overall, we conclude that there was substantial evidence by which the trial court could have concluded that the defendant knowingly and voluntarily waived his

---

[4] For instance, in the cell block the defendant spoke to his friend in Spanish and told him not to say anything to the police. He used Spanish to try to conceal the content of his conversation while in the presence of a police officer. This exhibited that he understood his right to remain silent.

right to remain silent on both occasions when he was questioned by police.[5] Therefore, the trial court did not err in denying the defendant's request to suppress the statements.

There is no error.

In this opinion the other judges concurred.

---

[5] Because we find that the defendant knowingly and intelligently waived his right to remain silent as to both the first and second set of statements, we do not reach the defendant's arguments based upon the "cat out of the bag" doctrine of *United States* v. *Bayer,* 331 U.S. 532, 540, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947). See also *Oregon* v. *Elstad,* U.S. , 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985).