STATE OF CONNECTICUT *v.* HENRY COLLETTE
(11480)

STATE OF CONNECTICUT *v.* DONATO TELESCO
(11481)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and S. FREEDMAN, Js.

Argued January 14—decision released April 1, 1986

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellants (defendants).

*Felix J. Springer,* special assistant state's attorney, with whom, on the brief, were *Bruce P. Hudock* and

*John M. Massameno,* assistant state's attorneys, and *Susan E. Gill,* deputy assistant state's attorney, for the appellee (state).

SANTANIELLO, J. After a joint jury trial, the defendants, Henry Collette and Donato Telesco, were each found guilty of committing burglary in the third degree in violation of General Statutes § 53a-103,[1] and larceny in the second degree in violation of General Statutes (Rev. to 1981) § 53a-123.[2] The trial court subsequently sentenced them both to ten years imprisonment. They now appeal claiming that the trial court erred (1) in denying their motions to suppress the in-court and out-of-court identifications made by Patricia Coombs, a victim of the crimes; (2) in refusing to dismiss the charges of larceny in the second degree on the ground that the state failed to prove that the value of the stolen property exceeded $500; (3) in commenting to the jury on facts in evidence, in violation of their rights to due process and a fair trial; and (4) in sentencing them on the basis of false information, in violation of their right to due process. We find no error.

The jury could reasonably have found that the defendants and another man broke into the home of Patricia and Richard Coombs in Stamford between 9 and 10 a.m. on August 18, 1981. They entered the home through a window and stole money, jewelry and other valuables. No one was in the house at the time, but Patricia Coombs pulled her car into the driveway in time to watch the three men exit the house one by one and get

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes (Rev. to 1981) § 53a-123 (a) provides: "A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another."

into their car. She immediately called the police and gave them a description of the suspects and their car. Within minutes, the Stamford police spotted a car in the vicinity of the robbery which met the description given by Coombs. The occupants of the vehicle attempted to avoid the police, but after a chase by car and later on foot, they were apprehended. To be sure that they had the right people, the police brought the three men over to the Coombs' home for identification. Patricia Coombs viewed the men from her window and was certain that the defendants were two of the three men that had been at her home earlier.

## I

The defendants first claim that the trial court should have suppressed the in-court and out-of-court identifications made by Coombs. " 'A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure.' " *State* v. *Hinton,* 196 Conn. 289, 293, 493 A.2d 836 (1985); *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). In order to succeed, "the defendant must prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985); *State* v. *Parker,* 197 Conn. 595, 598, 500 A.2d 551 (1985); *State* v. *Hinton,* supra, 292–93.

"We recognize that almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively 'suggestive,' but not all suggestive confrontations are unnecessary. *State* v. *Hamele,* 188 Conn. 372, 376–77, 449 A.2d 1020 (1982); *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976)." *State* v. *Aversa,* 197 Conn. 685, 694, 501 A.2d 370 (1985). An immediate

viewing of the suspect may be justified where "it [is] important for the police to separate the prime suspect gold from the suspicious glitter, so as to enable them . . . to continue their investigation with a minimum of delay." *State* v. *Maturo*, 188 Conn. 591, 596, 452 A.2d 642 (1982). Circumstances may also justify an immediate viewing because prompt on-the-scene confrontations are generally more reliable and allow an innocent party to be released quickly if no positive identification is made. *State* v. *Aversa,* supra, 694 n.3; *State* v. *Hamele,* supra; *State* v. *Mallette,* 159 Conn. 143, 149, 267 A.2d 438 (1970).

Under the circumstances of this case, the confrontation between Coombs and the defendants was reasonably necessary. The police had in their custody three men who generally met the description given by Coombs. It was entirely possible, however, that they were not the men who had burglarized the house. Indeed, as it turned out, Coombs was able to identify two of the men positively, but she stated with certainty that the third man presented to her was *not* one of the men she had seen earlier. The immediate viewing enabled the police to focus their investigation and gave them greater assurance that innocent parties were not unjustly detained.

Even if we were to assume that the confrontation was unnecessarily suggestive, under the totality of the circumstances, Coombs' identification of the defendants was reliable.[3] Coombs had the opportunity to view

---

[3] "The constitutional test for reliability requires the trial court to consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault,* [182 Conn. 366, 373–74, 438 A.2d 432 (1980)]." *State* v. *Hinton,* 196 Conn. 289, 295–96, 493 A.2d 836 (1985).

the defendants for several minutes while they left the house. Her view was unobstructed and she was only ten to fifteen feet away at the time. She directed her attention to each of the men as they came out and even attempted to ask them questions. Her description of the defendants to the police was accurate, the identifications were made within an hour of her first encounter with the defendants, and she was certain that the defendants were two of the three men who had been in her home that day. Moreover, Coombs did not identify the defendants just because they were presented as suspects. Three men were apprehended and shown to her, yet she positively identified only two. This indicates that she was " 'an unlikely candidate for subliminal seductions' "; *State* v. *Perez,* supra, 75; *State* v. *Ledbetter,* 185 Conn. 607, 615, 441 A.2d 595 (1981); and that even if the police procedures were suggestive, they did not corrupt the overall reliability of her identifications. See *State* v. *Theriault,* 182 Conn. 366, 374–75, 438 A.2d 432 (1980).

## II

The defendants next claim that the trial court erred in refusing to dismiss the charges of larceny in the second degree. They contend that the state failed to prove beyond a reasonable doubt that the value of the stolen items exceeded $500 as required by General Statutes (Rev. to 1981) § 53a-123 (a) (2), and, as a result, that it did not establish an essential element of the crime. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). At trial, the stolen property was displayed to the jury. It consisted of four watches, nine bracelets, seven rings, a pair of earrings, a passport wallet, a travel clock, fifty-one British pounds and some miscellany. To establish the value of the items taken from the Coombs' home, the state called as its expert witness Henry Rebhun, an experienced professional jeweler and appraiser. Rebhun testified that the

value of the items on the date of the burglary was approximately $2000. The defendants called Ben Messim, also a professional jeweler, to rebut Rebhun's testimony. Messim appraised the items as having a total value of between $400 and $453.[4] The defendants argue that the state failed to establish the essential element of value because Rebhun testified to the replacement value of the property and not to the fair market value.

In establishing the value of the stolen items, the state is required to prove "the *market value* of the property . . . at the time and place of the crime . . . ." (Emphasis added.) General Statutes § 53a-121 (a) (1).[5] "Market value" has been defined as " ' "the price that would in all probability . . . result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." ' " *State* v. *Cochran,* 191 Conn. 180, 190, 463 A.2d 618 (1983); *O'Brien* v. *Board of Tax*

---

[4] Rebhun testified on the value of each item. The following is a breakdown of his estimates: woman's Timex watch, $20–$35; Longines watch, $75–$100; Seiko watch, $70–$75; Wachman watch, $65–$70; silver bracelet with charms, $250; six silver bangle bracelets, $100; silver bracelet, $75; gold-filled bracelet, $25; sapphire ring, $120; two silver rings, $100; silver twist ring, $20; eight-section twist ring, $125; aquamarine ring, $90; sapphire guard ring, $125; silver and turquoise earrings, $35; silver money clip, $50; passport wallet, $50; travel clock, $50; miscellaneous items, $200; 51 British pounds, based on a $4 exchange rate, $200.

Messim also appraised some of the items individually. His estimates were: Timex watch, $5; Longines watch, $10; Seiko watch, $10; Wachman watch, $10; one silver bracelet, $50; seven bangle bracelets, claiming that they were not silver, no value; sapphire ring, claiming that it was synthetic, $25; one silver ring, $7–$8; enamelled silver ring, $10; silver twist ring, $8–$10; butterfly ring, $5–$10; eight-section twist ring, $8–$10; silver ring, $10–$15; gold ring, $30; earrings, $5; money clip, $5; passport wallet, $50; travel clock, no value; miscellaneous items, $40; 51 British pounds, based on a $1.84 exchange rate, $93.

[5] General Statutes § 53a-121 (a) (1) provides: "For the purposes of this part, the value of property or services shall be ascertained as follows: (1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime."

*Review,* 169 Conn. 129, 138, 362 A.2d 914 (1975). The determination of value is a question for the trier of fact. *State* v. *Cochran,* supra, 190–91. This court will not disturb the trier's determination if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

The defendants rely on Rebhun's remarks at two points during cross-examination to support their claim that he employed a replacement value rather than a market value standard. Defense counsel asked Rebhun whether he would buy the stolen items if offered to him for $200. Rebhun responded that he was not personally interested. From this, the defendants argue that had the market value of the goods actually been $2000, Rebhun would have jumped at the offer. Later during cross-examination, Rebhun was also asked how he appraised goods as an insurance adjuster. Rebhun answered: "Well, the insurance company, I also supply merchandise to the insurance company *because I replace merchandise* in case the merchandise is lost. The insurance company comes to me and wants to know [for] *how much can I replace* [sic] that particular merchandise." (Emphasis added.) The defendants claim that his reference to replacing merchandise directly supports their contention that he improperly valued the stolen goods at replacement cost.

Reviewing Rebhun's testimony as a whole, however, we conclude that the jury could reasonably have found that he appraised the items at market value. On direct examination, Rebhun testified as follows:

"Q. And what do you base you[r] appraisal value on?

"A. Comparison to what merchandise costs, and whether it's used and how much depreciation it has. This is how we come upon the price the value is.

"Q. Is it also based upon what you think you can get as a fair price?

"A. That's right.

\* \* \*

"Q. Are these estimates based on the wholesale or retail value of these items?

"A. Retail.

"Q. These are what you feel you could get is that correct?

"A. Yes."

Although he never used the statutory phrase "market value," he did state that he had estimated the price according to what the items would bring on the retail market. Rebhun also stated that he had taken depreciation into consideration, something an appraiser would not do if he were making his valuations on the basis of replacement cost. The jury could reasonably have inferred that his use of the word "replace" on cross-examination was made in reference to his role as an insurance appraiser, not to his method of valuation of the stolen property. See *State* v. *Paoletto,* 181 Conn. 172, 183, 434 A.2d 954 (1980). As to his refusal to buy the goods, there was no indication that the offer was declined because the value of the goods was less than the price offered.

We therefore conclude that Rebhun's testimony gave the jury a reasonable basis upon which it could find that the market value of the stolen property exceeded $500. The jury was free to choose between Rebhun's and Messim's appraisals. See *State* v. *Cofone,* 164 Conn.

162, 165, 319 A.2d 381 (1972). Thus, the state met its burden of establishing the elements of the crime of larceny in the second degree and the trial court did not err in refusing to dismiss the larceny charges against the defendants.

### III

The defendants also claim that during its charge to the jury the trial court unfairly commented on facts in evidence.[6] They argue that the court through its comments erroneously directed the jury to find that the defendants were two of the three men who had entered the Coombs' home, that they had been there without permission, and that a burglary had occurred.

"The trial court may, in its discretion, make reasonable comments on the evidence. *State* v. *Schoenbneelt,* 171 Conn. 119, 124, 368 A.2d 117 (1976). Such comments, however, must not advise the jury on how to decide the case; *State* v. *Storlazzi,* 191 Conn. 453, 465, 464 A.2d 829 (1983); but may merely give the jury a fair presentation of the issues. See *State* v. *Schoenbneelt,* supra, 124." *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985). "The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done." *State* v. *Storlazzi,* supra, 466; *State* v. *Mullings,* 166 Conn. 268, 274, 348 A.2d 645 (1974). Individual comments are not to be judged in isolation from the charge as a whole; *State* v. *Moss,* 189 Conn. 364, 367, 456 A.2d 274 (1983);

---

[6] The defendants concede that they did not take an exception to the court's charge at trial. Ordinarily, the failure to raise the claim below would restrict our review on appeal to consideration of plain error. Practice Book § 3063. We consider the defendants' claim insofar as it implicates their constitutional rights to a jury trial and to due process of law in light of the assertion that the court effectively directed the jury on some of the factual issues by virtue of its comments on the evidence. *State* v. *Evans,* 165 Conn. 61, 71, 327 A.2d 576 (1973); see also *State* v. *Taylor,* 196 Conn. 225, 230, 492 A.2d 155 (1985).

*State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); and should be examined not in a vacuum, but in the context of the factual issues raised at trial. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

The defendants claim that the court's instruction for the jury to examine "the totality of the circumstances surrounding the confrontation of Mrs. Coombs and the accused" directed the jury to find that the defendants were the men Coombs had seen leaving the house.[7] Examining this statement in the context of the entire charge, however, we conclude that the court was merely explaining to the jurors that they must carefully weigh the reliability of Coombs' identification. Granted, the court did verbally equate the defendants with the persons Coombs had seen, but the court in its charge made it clear that it was up to the jury to decide the question of identity.

Next, the defendants claim that the court's statement that "[n]o one had license to be in [the home]" withdrew from the jury's consideration the essential element of burglary that the entry be unlawful.[8] The court

[7] The court's charge on this issue was as follows: "You will examine what was her ability to make an observation. Was there adequate opportunity? What were the lighting conditions? *You examine the totality of the circumstances surrounding the confrontation of Mrs. Coombs and the accused.* All three that she has spoken about, coming down the steps of her house, what she said, a brilliant sunny day or something like that. You have pictures taken that day in the driveway. You have evidence to examine. What were the circumstances? Satisfy yourself, you must satisfy yourself. Inquire of that substance and determine whether you are satisfied that the identification of the accused is the, is done by proof beyond a reasonable doubt . . . ." (Emphasis added.)

[8] Set in context, the court's charge was: "This is the essence of burglary in every degree, and unless it is proved by the State beyond a reasonable doubt, there can be no conviction. To establish burglary the State must prove that the defendant entered unlawfully or that regardless of how an accused entered, he remained there unlawfully. To make either the entry or the remaining unlawful within this requirement it must be shown that they did so when not licensed or priveleged [sic] to do so. *You review the evidence about that. No one had license to be in there.*" (Emphasis added.)

in this instance was commenting on the uncontradicted testimony of Patricia Coombs that she had not given anyone permission to enter her home. The court did not, however, withdraw the issue from the jury's determination. Immediately before making the challenged statement, the court explained that it was the state's burden to prove beyond a reasonable doubt that the defendants entered the home unlawfully and then it emphatically stated that "[y]ou [, the jury,] review the evidence about that."

The defendants also claim that the court practically directed a verdict against them on the burglary charge when it instructed: "I don't think there is really any dispute, a burglary occurred."[9] The court was at this point diverting the jury's attention away from the burglary issue, which was virtually uncontested at trial, and toward the identification question, the key to the whole case. This type of emphasis and direction by the trial court was, under the circumstances, appropriate. See *State* v. *Taylor,* supra, 232. The court did not withdraw from the trier the issue of whether a burglary had occurred. The court afterwards set out the elements of burglary and told the jury that it was the state's responsibility to prove those elements beyond a reasonable doubt. Overall, we conclude that, read in its entirety, the court's charge fairly presented the case to the jury.

---

[9] The court charged: "That is not the case in this situation. Clearly the claim in this case, and *I don't think there is really any dispute, a burglary occured* [sic]. That's been stated to you during the course of argument, during the course of the trial. That does not relieve me of the burden of explaining burglary to you. What I said about unlawful entry or remaining is summed up in our statute . . . . The person enters or remains unlawfully in or upon a premises when the premises at the time of such entry or remaining are not open to the public and the actor is not otherwise licensed or priveleged [sic] to do so. You are bound by that statutory definition. . . ." (Emphasis added.)

## IV

The defendants' remaining claim is that they were denied their constitutional right to due process when the trial court considered false information in determining their sentences. At the sentencing hearing, the court reviewed the defendants' presentence investigation reports, commented on their criminal records and gave its overall impressions of their character. The court sentenced them to five years imprisonment on each count, to be served consecutively, for a total effective sentence of ten years. The defendants' claim focuses on the following remarks made by the court during the sentencing hearing: "I'm satisfied as well, that you gentlemen have perpetrated a fraud on the Court. [You have] a public defender . . . [a]nd I think [Mr. Telesco] even commented . . . that the gold around your neck would have paid for a lawyer."[10] The

---

[10] The court's remarks, set in context, were as follows: "Now in respect to the sentences to be imposed, The Court, is not unaware of the records of the accused. I note from the PSI's that certainly Mr. Telesco has just completed a term of eight (8) to sixteen (16) years. And, without paying any concern whatsoever for his three other pending cases in Part A; here we have a gentleman who's back on the street. Equips himself with a rented vehicle, which he switches. Occupies that car with other men. Outfits himself with a police scanner. And is identified coming out of a citizen's home, which has been intruded upon. Intruded upon by these gentlemen and their companion. I am not unmindful from his absence from the trial. And his involvement in that escapade. Having to be returned here to Court. I'm not unmindful of his tumultuous upbringing. But the people are demanding their punishment be given to people who commit the acts that this gentleman committed.

"His defense and his statement in the P.S.I., for the Sentence Review Division, and for anybody else, as far as this Court is concerned who heard the case, has seen the gentleman, has seen the witnesses, the position that they maintain in these PSI's is ridiculous. It flies in the fact [sic] of reason. And it would take a very naive judge to understand, feel, that you were not deeply involved in this act.

\* \* \*

"The other fellow, he's got a suspended sentence over his head. And I have read his PSI. And I have read the previous PSI. And I think if I were

defendants argue that the allegation of fraud was completely unfounded and that the court improperly sentenced them on the basis of this information.

We have recently stated that "if a sentence is within statutory limits it is not generally subject to modification by a reviewing court. *United States* v. *Bernard,* 757 F.2d 1439, 1444 (4th Cir. 1985); *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982). 'A sentencing judge has very broad discretion in imposing any sentence within the statutory limits . . . .' *United States* v. *Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972)." *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986). The court may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come." *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). Due process requires, however, that information be considered only if it has some minimal indicium of reliability. *United States* v. *Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982); *State* v. *Huey,* supra, 127; see also *State* v. *Thompson,* 197 Conn. 67, 77, 495 A.2d 1054 (1985). A court should refrain from comments that find no basis in the rec-

Judge Meehan at that time I probably would have felt that he was entitled to a break. He had made a change in his life at that point. And I don't know if I would have given the same term, but I think I would have given him a second chance. He had been, otherwise, not too bad. But he's bent on this life. He and this fellow have gotten together. And they want to live that life. *I'm satisfied as well, that you gentlemen have perpetrated a fraud on the Court. As having a public defender and a special public defender. Not unmindful of the—And I think you even commented during the course of your failure to appear at trial, that the gold around your neck would have paid for a lawyer.* That was Mr. Telesco. Your appearance here, and your mode of existence in society is to get away with whatever you can get away with. *You are both frauds.* You are both people that the society doesn't need to have around. You should be isolated. You should be removed from the community, both of you, at this point. No person, no person should have the likes of you in their home. Going through their personal effects. And just in case you haven't heard it before, you heard it today." (Emphasis added.)

ord. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence. *United States* v. *Ibarra,* 737 F.2d 825, 827 (9th Cir. 1984); *United States* v. *Lemon,* 723 F.2d 922, 933 (D.C. Cir. 1983); *United States* v. *Powell,* 487 F.2d 325, 328 (4th Cir. 1973).

Because the defendants have failed to establish that the information was materially false and that it had a substantial effect on the sentences imposed, we conclude that they were not denied their right to due process. The defendants have presented no support for their claim that the allegation of fraud was untrue. We cannot verify whether the defendant Telesco's comment about gold jewelry was ever made because the statement does not appear in the record. Other than the fact that the defendants are represented by the public defender's office in this appeal, they have made no showing that they were at the time of trial eligible for public representation. On whether the court substantially relied on this information in sentencing, the record shows that the primary concern of the trial court was the defendants' history of criminal offenses. The remark concerning fraud was, in context, more of an admonishment than a basis for sentencing. The fact that both defendants were sentenced to ten years imprisonment, terms close to the statutory maximum, does not automatically compel the conclusion that the alleged fraud was a substantial basis for the sentences.

There is no error on either appeal.

In this opinion the other judges concurred.