STATE OF CONNECTICUT *v.* MICHAEL JENNINGS
(6962)

SPALLONE, O'CONNELL and FOTI, Js.

Argued March 15—decision released August 1, 1989

*Ronald D. Williams, Jr.,* assistant public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *John Smriga,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant was convicted after a jury trial of the crime of possession of cocaine with intent to sell by a person who is not drug dependent in violation of the state dependency producing drug law, General Statutes § 21a-278 (b).[1] On appeal, the defendant claims the trial court erred (1) in allowing into evidence money seized at the time of arrest, (2) in allowing into evidence thirteen untested packets of suspected narcotics, and (3) in refusing the defendant's request to instruct the jury on "consciousness of innocence."

The jury could reasonably have found the following facts. On September 22, 1987, the Bridgeport police department's tactical division received and responded to information that drug sales were occurring at the Evergreen Apartments on Albion Street, Bridgeport. Police officers and marked police vehicles were dispatched to investigate. Two of those officers, upon entering the courtyard area of the Evergreen Apartments from the rear, encountered the defendant walking toward them. The defendant, looking back over his shoulder toward the marked police cars on Albion Street, drew a brown paper bag from his jacket pocket and discarded it. The officers stopped the defendant and retrieved the bag. Inside were two clear reseala-

---

[1] General Statutes § 21a-278 provides in pertinent part: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . who is not at the time of such action a drug-dependent person . . . shall be imprisoned for not less than five years nor more than twenty years . . . . "

ble plastic bags containing thirty-three white paper packets, twenty of which later tested positive for the presence of cocaine. The officers placed the defendant under arrest, searched his person and found and seized $100. This money and the thirty-three paper packets were admitted into evidence at trial over the defendant's objections.

The defendant argues that the police failed to articulate the specific facts that focused their general suspicion of criminal activity in the area upon him in particular. Without a specific focus to justify the investigative stop, the defendant reasons, the money found on his person should have been suppressed as the product of an unconstitutional search and seizure under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. We disagree.

It is well established that the police may briefly detain an individual for investigative purposes if they have a reasonable and articulable suspicion that this individual is, or has been, engaged in criminal activity. *Reid* v. *Georgia,* 448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 1890 (1980); *Terry* v. *Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Aversa,* 197 Conn. 685, 690, 501 A.2d 370 (1985). The test of reasonable and articulable suspicion is objective: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio,* supra, 22; *State* v. *Aversa,* supra, 690–91; *State* v. *Williamson,* 10 Conn. App. 532, 541, 524 A.2d 655, cert. denied, 204 Conn. 801, 525 A.2d 965 (1987). There must be more than a bare suspicion; the facts at hand must provide a basis for singling out those stopped. *Wong Sun* v. *United States,* 371 U.S. 471, 479–80, 80 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State* v. *Williamson,* supra, 542.

The trial court expressly found that the police officers were aware of various facts that satisfy the "reasonable and articulable suspicion" standard necessary to justify a *Terry* stop. The officers were sent by their sergeant to an area known for frequent narcotics sales on the basis of information that drug sales were then occurring. The defendant apparently was aware of the police cars behind him and, when encountered, was leaving the area. The officers observed the defendant discard a paper bag and, from their training and experience, had reason to believe the bag contained drugs. Each of these circumstances has been held by reviewing courts to be a valid basis for assessing the reasonableness of police action.

In deciding whether to stop a suspect briefly, the police may consider the character of the neighborhood and their knowledge of narcotics distribution in the area. *State* v. *Rodriguez,* 14 Conn. App. 574, 578, 542 A.2d 342 (1988). The police may reasonably act on current information that drug trafficking is in progress. *State* v. *Rodriguez,* 11 Conn. App. 140, 145, 525 A.2d 1384 (1987). Imminent action may be necessary to prevent a suspect's departure. *United States* v. *Santana,* 485 F.2d 365, 368 (2d Cir. 1973), cert. denied, 415 U.S. 931, 94 S. Ct. 1444, 39 L. Ed. 2d 490 (1974). The police may stop an individual who discards an object that may possibly be a container for narcotics. Id.

The defendant argues that the officers had no reason to focus their generalized suspicion on him as he merely discarded a paper bag and did not flee at the officers' approach. While the police may have had no more than a general suspicion of illegal conduct when they approached, that suspicion became specific and focused on the defendant when he directed the officers' attention to himself and "caused the general suspicion of illegal activity to become particularized upon himself." *State* v. *Williamson,* supra. The focusing act in

*Williamson* was flight from the police; the focus in this case was on a defendant who, in an apparent effort to get away from the police activity in the street behind him, discarded an object possibly containing drugs, particularly "a brown paper bag which has long been a sort of hallmark of the narcotics business." *United States* v. *Santana,* supra. That this action was ambiguous and could have as easily been interpreted as innocent, "betrays a misunderstanding of the concept of 'reasonable and articulable suspicion.' " *State* v. *Williamson,* supra. "The possibility of an innocent explanation does not deprive the officers of the capacity to entertain a reasonable suspicion of criminal conduct." Id., 542–43, quoting *In re Tony C.,* 21 Cal. 3d 888, 894, 582 P.2d 957, 148 Cal. Rptr. 366 (1978).

Under the circumstances of this case, we conclude that the facts available to the detaining officers at the time were sufficient to justify the investigative stop. The police had probable cause to make the arrest having found what appeared to be narcotics in the bag tossed away by the defendant. The search of the defendant's person and the seizure of the $100 were incident to this lawful arrest, a recognized exception to the warrant requirement. *State* v. *Copeland,* 205 Conn. 201, 209, 530 A.2d 603 (1987). The money was therefore properly admitted into evidence at trial.

We turn now to the question of the admissibility of the unanalyzed suspected narcotics. The brown paper bag discarded by the defendant and recovered by the police contained thirty-three paper packets of powder in two plastic bags. All were sent to the department of health service laboratories for testing. The state toxicologist testified that the packets were weighed and that twenty packets, ten from each bag, were randomly selected and tested for narcotics. Each of the twenty tested positive for the presence of cocaine. The defendant's motion to suppress the thirteen untested packets

was denied at trial and all thirty-three packets were introduced into evidence. The defendant asserts that the unanalyzed packets were inadmissible as irrelevant. We disagree.

Questions of relevance must be determined in each case by reliance on reason and judicial experience as no exact test of relevancy is found in the law. *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978); *State* v. *Baskins,* 12 Conn. App. 313, 317, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987). " 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case.' " *State* v. *Baskins,* supra, 317. A fact is relevant whenever its existence, either alone or in connection with other facts, makes more certain or probable the existence of another fact. Id., 317–18. " '[A]ny fact may be proved which logically tends to aid the trier in the determination of the issue.' " Id., 318, quoting *State* v. *Villafane,* 171 Conn. 644, 674–75, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). Relevant evidence is admissible if the trial court, in the exercise of its broad discretion, determines that the probative value of the evidence outweighs its prejudicial effect. *State* v. *Baskins,* supra, 318.

The defendant was charged with possessing narcotics with the intent to sell. The quantity of narcotics found in the defendant's possession was probative of whether the defendant intended to sell the drugs. The direct evidence of the tested packets and the circumstantial evidence of the untested packets are equally probative. *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981); *State* v. *Baskins,* supra, 316. A jury is entitled to draw reasonable and logical inferences from the facts proven. *State* v. *Baskins,* supra. The jury here was free to infer that the untested material contained the same contra-

band as the analyzed material from which it was drawn. See, e.g., *United States* v. *Eakes,* 783 F.2d 499, 504 (5th Cir.), cert. denied, 477 U.S. 906, 106 S. Ct. 3277, 91 L. Ed. 2d 567 (1986); *State* v. *Addazio,* 169 Conn. 416, 421, 363 A.2d 153 (1975); *State* v. *Baskins,* supra, 316–17.

A trial court's determination that evidence is admissible will be reversed only when there has been an abuse of discretion or when an injustice has been done. *State* v. *Carr,* 172 Conn. 458, 464, 374 A.2d 1107 (1977). We agree with the trial court that the untested packets were relevant to an issue before the jury and that the probative value of the evidence objected to outweighed its prejudicial effect. We find no abuse of discretion or injustice in the case.

The defendant's final claim is that the trial court erred in refusing to instruct the jury on consciousness of innocence.[2] Just as flight from the police supports a jury instruction on consciousness of guilt, the defendant claims that failure to attempt escape, conversely, should support an instruction on consciousness of innocence. The defendant's requested instruction was not a statement of the applicable law and so was therefore improper. A request for jury instructions must clearly state a proposition of law "with the citation of authority upon which it is based, and the evidence to which the proposition should apply." Practice Book § 854. It

---

[2] By written motion, the defendant sought to have the jury instructed as follows: "CONSCIOUSNESS OF INNOCENCE: Flight from the scene of the crime or from police officers, when unexplained, tends to prove a consciousness of guilt. On the other hand, absence of flight from the scene of the crime or from police officers approaching may be considered a basis for an inference of innocence. Therefore, if you find from the facts presented during testimony that the defendant Michael Jennings, upon being approached and subsequently detained by Officers Vivo and Bergquist, did not attempt to flee you may use this factual finding to draw an inference of consciousness of innocence."

is not error to refuse a charge that is contrary to the law. *Slicer* v. *Quigley,* 180 Conn. 252, 258, 429 A.2d 855 (1980).

The defendant has failed to cite any authority in support of his request for the jury charge. *State* v. *Huff,* 10 Conn. App. 330, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987), cited by the defendant, is not supportive. In *Huff,* the issue was whether the defendant's failure to flee a later encounter with his assault victim could be argued as consciousness of innocence in the defendant's summation to the jury. Id., 341. The court held that the failure to flee is a factual argument that may be made to a jury in summation of the evidence. Id., 344. Proper subject matter for summation is a matter of commenting upon or suggesting inferences from facts in evidence. Id., 340–41. A proper jury charge, however, must be correct in the law. *State* v. *Hinckley,* 198 Conn. 77, 88, 502 A.2d 388 (1985).

Far from finding support in law for the defendant's request, we find authority very much to the contrary.[3] This court has previously considered a request for similar jury instructions. In *State* v. *Timmons,* 7 Conn. App. 457, 465, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987), the defendant

[3] A number of jurisdictions have addressed the issue and the decisions appear unanimous that a defendant may properly argue his absence of flight to the jury but he is not entitled to any corresponding "consciousness of innocence" jury instruction. See, e.g., *United States* v. *McQuarry,* 726 F.2d 401, 402 (8th Cir. 1984); *United States* v. *Cuni,* 689 F.2d 1353, 1356 (11th Cir. 1982); *United States* v. *Telfaire,* 469 F.2d 552, 557–58 (D.C. Cir. 1972); *United States* v. *Scott,* 446 F.2d 509, 510 (9th Cir. 1971); *People* v. *Green,* 27 Cal. 3d 1, 36–39, 609 P.2d 468, 164 Cal. Rptr. 1 (1980); *Scully* v. *State,* 256 Ga. 683, 685, 353 S.E.2d 29 (1987); *State* v. *Mayberry,* 411 N.W.2d 677, 684 (Iowa 1987); *Commonwealth* v. *Sowell,* 22 Mass. App. 959, 961, 494 N.E.2d 1359 (1986); *State* v. *Rhinehart,* 68 N.C. App. 615, 619, 316 S.E.2d 118 (1984); *State* v. *Sims,* 13 Ohio App. 3d 287, 289, 469 N.E.2d 554 (1984).

requested a jury instruction that his voluntary surrender to the police supported an inference of innocence. In affirming the trial court's refusal to give the instruction, this court found no support in law for such a request. Id. The precedent is applicable here. The failure to flee, like voluntary surrender, "is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury." Id., 466.

There is no error.

In this opinion the other judges concurred.