[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Trooper Nicholas DeJohn of the Connecticut State Police was on routine patrol on Interstate 91 in the City of Middletown. At approximately 6:40 p. m. he observed an automobile traveling northbound in the third lane of the highway. As the car passed him he noticed that the vehicle's license plate was not securely attached to the vehicle. Trooper DeJohn decided to stop this auto because he was concerned that the auto might be stolen and he also wished to inform the out-of-state operator that traveling in the third lane was not legal in Connecticut.
Trooper DeJohn noticed as he pulled the car over that it was occupied by two individuals. Trooper DeJohn testified CT Page 206 that as he followed the vehicle he could not determine the age or ethnic background of the occupants. Upon stopping the car, the driver, Angel Ortiz, was asked for his license and registration. Ortiz did not have his license with him and the car was registered to the passenger's father. Trooper DeJohn asked the driver to step outside the car and come with him to the rear of the vehicle. Ortiz was asked where he was coming from and he replied that he was coming from his grandmother's in New York.
Trooper DeJohn then approached the passenger, Roberto Ayala, and asked where they were coming from but Ayala replied that he did not know. Both of the occupants stated that there was nothing illegal in the car.
Trooper DeJohn had both occupants of the car return to the vehicle while he checked Ortiz's license. Ortiz had a valid license. DeJohn testified that he returned to his cruiser to write out a warning for the motor vehicle violations and to inquire whether Ortiz or Ayala had any type of criminal history. This inquiry revealed that Ortiz had a case pending in Massachusetts for possession of burglar's tools. DeJohn radioed for a backup and a second trooper arrived. Trooper DeJohn asked both occupants for consent to search the vehicle and eventually did search the car and found a quantity of narcotics.
The defendants are attempting to suppress this evidence claiming that the search of the car was illegal.
The court finds that the initial stop by Trooper DeJohn was legal. The officer observed a loosely attached license plate on a car that was traveling in a lane on the highway that is reserved for passing. The trooper's assignment is enforcement of motor vehicle laws and the investigation of criminal activity. The trooper was simply doing his job when he stopped this vehicle to issue a summons or investigate any suspicion raised by the license plate's condition. The notion that the stop was a pretext to search the car is not supported by the evidence. The court believes that Trooper DeJohn was merely performing the normal duties of a patrol officer.
The problem with this stop is not its inception, but the length of the detention of the operator and his passenger. It should be noted that the original stop was because Trooper CT Page 207 DeJohn suspected the car might be stolen based on the condition of the license plate. Trooper DeJohn learned that the car was not stolen and that it was registered to the passenger's father. The State seeks to justify the further detention of the occupants based on the observations of the officer while he had the car stopped. The State claims that Trooper DeJohn's initial suspicions were further aroused by what he saw and, therefore, the "stop could be prolonged . . . as required by the circumstances." State v. Aversa, 197 Conn. 685
(1985). The State certainly cannot be claiming that the original suspicion of theft of the auto was aroused. That suspicion was completely dispelled by the officer's investigation.
The State claims that the detention could be prolonged because of other suspicions, apparently suspicions that the occupants of the car possessed contraband within the vehicle. The factors the State seeks to support this argument are: (1) both occupants gave inconsistent stories with regard to where they had been; (2) the passenger, Ayala, was nervous; (3) both occupants had beepers; (4) the driver did not have his license with him and, the inquiry to see if he was a licensed diver took longer because of other unrelated police activity; and (5) when Ortiz was asked if he was carrying anything illegal he stated, "no" but nodded his head in an affirmative manner.
The case that the State cites for this position State v.Williams, 205 Conn. 456 (1987) is not on point and is of no use in an analysis of this situation.
The question is, do these observations, either alone or together, allow the extension of this legal stop? The court does not believe that they do for these reasons: (1) The stories of the occupants are not inconsistent. It was entirely possible that the passenger, Ayala, could be unaware where they had been, it was Ortiz's grandmother who they had supposedly visited. If, in fact, this ambiguity aroused the suspicion of the officer, the "inconsistencies" could have easily been reconciled with a few additional questions. The law does not allow a limited inquiry by the police as a means of setting up a situation for a search but, rather, as a means to resolve these circumstances one way or the other. (2) The fact that the passenger was nervous is of no moment. Everyone stopped by an officer for whatever reason is nervous. (3) The beepers in the possession of these teenagers also cannot CT Page 208 be the basis for the prolonged detention. For whatever reason, beepers are now quite common, not only with those involved with dealing drugs, but also with many other people for various purposes including just fashion. (4) The length of the officer's inquiry into the driver's operating status cannot justify the entire twenty-nine minute stop, and certainly is not evidence of any criminal activity. (5) Ortiz's saying "No," but nodding his head yes when asked about contraband, is, once again, an ambiguity that could have been cleared up with a few simple questions.
None of these circumstances, either alone or in total, justified a twenty-nine minute detention of these defendants. Cases such as Terry v. Ohio, 392 U.S. 1, 88 S.Ct. (1868), and the Connecticut cases that interpret it do not and should not allow the reasonable approach allowed in these situations to be manipulated by the authorities to create a situation where they can conduct a search where the facts of the stop do not allow for that activity by the police. This was not amomentary stop. Trooper DeJohn is an experienced officer, well trained in the detection of criminal activity. Despite his qualifications and his good intentions, the information available to him did not warrant the continued detention of these subjects. General investigation of crimes may be based on suspicion and guesswork. An officer's decision to detain
someone and restrain that person's liberty must be made on more than a mere hunch.
Because the stop was unnecessarily prolonged without sufficient justification, the court need not reach the question of the validity of the consent of the occupants for the officer to conduct a search. Once the detention had been unnecessarily extended, any evidence seized past that point would be tainted. Wong Sun v. United States, 371 U.S. 471,83 S.Ct. 407.
The stop was legal, the length of the stop was not. The consent to search is not an issue. The defendants' motions to suppress are granted.