STATE OF CONNECTICUT *v.* RONNIE HOLLEY
(AC 25265)

Lavery, C. J., and Harper and West, Js.

Argued April 27—officially released July 19, 2005

*Norman A. Pattis*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Ronnie Holley, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] The defendant claims that (1) the prosecutor made

---

[1] The jury found the defendant not guilty of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). The court sentenced the defendant to a total effective term of fifteen years incarceration, execution suspended after ten years, followed by ten years of probation.

statements during jury selection that diluted the state's burden of proof, (2) the trial court delivered an inaccurate instruction concerning reasonable doubt, (3) the court improperly delivered a consciousness of guilt instruction and failed to deliver a consciousness of innocence instruction, and (4) the court improperly precluded the defendant from eliciting certain testimony concerning the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 27, 2002, the defendant raped and assaulted his then girlfriend, the victim, in the residence that they shared. The defendant forced the victim, against her physical and verbal protests, to engage in penile-vaginal intercourse with him. During the assault, the defendant used the victim's necklace to choke her. The defendant also threatened the victim with bodily injury while brandishing large kitchen knives. The victim sustained injuries about her face and neck, as well. The victim fled from the residence after the incident and summoned police assistance. Additional facts will be set forth as necessary.

I

The defendant first claims that the prosecutor made statements during jury selection that diluted the state's burden of proof. We disagree.

During jury selection, the prosecutor asked several prospective jurors whether they understood the concept of reasonable doubt. In doing so, the prosecutor typically referred to the state's burden of proof as a "human burden" of proof beyond a reasonable doubt.

The following colloquy between the prosecutor and juror L[2] transpired during the fourth day of jury selection:

[2] We refer to the juror by his initial to protect his legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

"[The Prosecutor]: Okay. Now, the burden of proof in a criminal case, you have already heard, is proof beyond a reasonable doubt and, what a burden of proof means is, how certain the jury has to be. The judge will give you a complete definition of what proof beyond a reasonable doubt means if you sit as a juror on this case. But one thing it doesn't mean, proof beyond a reasonable doubt is not as high a burden as would be proof beyond all doubt or proof beyond a shadow of a doubt or proof to an absolute certainty. You may have heard this in the movie?

"[L]: Yes, I did.

"[The Prosecutor]: Does that make sense to you that those things are greater than what we have to prove?

"[L]: Yes.

"[The Prosecutor]: And would you also agree with me that, in the real world, when we are dealing with human beings and their interaction with each other, that it's very rare to prove anything absolutely?

"[L]: Rare to prove anything—anything absolutely?

"[The Prosecutor]: Absolutely beyond any doubt?

"[L]: Well, if you give me a dollar, I know it's a dollar, so—

"[The Prosecutor]: Okay. All right. But when you have people who are—who have experienced something and are talking about it, do you often get that absolute black and white that if there's a dollar, it's a dollar? You see, what I'm saying is, when you have people working with each other, interacting with each other, it's not all that common—

"[L]: Yes.

"[The Prosecutor]:—right?

"[L]: Yeah.

"[The Prosecutor]: And because it's not all that common, the judge—the jury—the legal system and the judge in this case doesn't require us to prove things absolutely—

"[L]: Yes.

"[The Prosecutor]:—or beyond all doubt?

"[L]: Yes, I understand.

"[The Prosecutor]: There's a *human burden* called proof beyond a reasonable doubt. Okay." (Emphasis added.)

After the parties questioned L, the defendant's attorney objected to the prosecutor's use of the phrase "human burden," which the prosecutor used previously during the examination of several other prospective jurors. The defendant's attorney argued that the phrase was misleading. The court overruled the objection, and the prosecutor used the phrase during his subsequent examination of several other prospective jurors.

The defendant argues that the prosecutor's use of the phrase diluted the state's burden of proof "by inviting jurors to forgive weaknesses in the state's proof . . . ." The defendant argues that by using that phrase, the prosecutor impermissibly "contrast[ed] the law's highest burden of proof with some other sort of proof, some God-like vision of certainty that exists . . . in the human minds of those who believe in such things . . . ." The defendant further argues that the prosecutor's use of the phrase is a "blatant appeal for sympathy" in that it asks the jury to overlook weaknesses in the state's case because "try as he might, [the prosecutor] must work only with the human stuff at hand."

"[T]he trial court is vested with broad discretion in determining the scope of counsel's inquiry [during voir

dire]. . . . The court has a duty to analyze the examination of venire members and to act to prevent abuses in the voir dire process. . . . [T]he court's actions ordinarily will not be disturbed unless the court has clearly abused its discretion or it appears that prejudice to one of the parties has resulted. . . .

"We have recognized that the purpose of examining members of the venire is twofold: first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge. . . . [T]he court should grant such latitude as is reasonably necessary to fairly accomplish the purposes of the voir dire." (Citations omitted; internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 251–52, 849 A.2d 648 (2004).

It is not the duty of counsel to instruct venire members or selected jurors with regard to the law; that is the duty of the court. Nonetheless, because the purpose of voir dire is to elicit information on which the court and the parties fairly can evaluate a venire member's ability to serve as a juror, it is customary for counsel to inquire of venire members whether they are inclined to adhere to and to apply the legal principles that generally will apply to the matter before them.

Having reviewed the prosecutor's examination of L and every other venire member, we are not persuaded that the prosecutor inaccurately characterized the state's burden of proof when he referred to proof beyond a reasonable doubt as a "human burden." The prosecutor typically used that phrase after accurately informing jurors that the state did not have to prove its case to the level of "perfection," "proof beyond a shadow of a doubt," "proof beyond all possible doubt," "100 percent certainty" or "absolute proof." The

context in which the prosecutor used the phrase does not suggest that venire members would interpret it to suggest that the state bore a burden of proof less than proof beyond a reasonable doubt. Instead, our review of the record reveals that the prosecutor distinguished proof to a level of absolute certainty from the state's burden of proof beyond a reasonable doubt.

Contrary to the defendant's assertions, we are not persuaded that the phrase "human burden" inherently detracts from the state's burden of proof. The defendant points out that the trial is "a human process replete with all the frailties of which we are capable." The state's burden of proof ultimately is borne by the attorney who prosecutes cases on behalf of the citizens of the state. That being the case, to refer to the burden of proof as a "human burden" is merely to state the obvious. We decline the defendant's invitation to torture the phrase to such an extent that we would attach to it meanings that are not readily apparent. Similarly, "[w]e do not assume that every statement made by the prosecutor was intended to have its most damaging meaning." *State* v. *Dearborn*, 82 Conn. App. 734, 749, 846 A.2d 894, cert. denied, 270 Conn. 904, 853 A.2d 523 (2004). The phrase "human burden" does not, by any reasonable interpretation, reflect either an appeal for sympathy or a suggestion that the state does not have to prove its case beyond a reasonable doubt. Accordingly, we conclude that the court's ruling did not reflect an abuse of its discretion.[3]

---

[3] Even were we to conclude otherwise, we nonetheless would deem the court's ruling to be harmless. Prior to the commencement of individual voir dire, the court instructed venire members that it would instruct the jury with regard to the law it must apply to the facts of the case. During its charge, the court delivered a thorough and proper instruction with regard to the state's burden to prove its case beyond a reasonable doubt. We uphold that instruction in part II. The court prefaced its instructions on the law as follows: "It is my duty to state the rules of law involved in the decision of this case and your duty to find the facts. Insofar as I state the law to you, what I say is binding upon you, and you are to understand that [if] in stating the law I differ from the claims made by counsel in argument, you will

## II

The defendant next claims that the court delivered an inaccurate instruction concerning reasonable doubt. We disagree.

The record reflects that the defendant submitted a timely request to charge that included the following instructions concerning reasonable doubt: "[The state's burden of reasonable doubt] is not lightly met and is not reached until and unless you, the fact finders, reach a subjective state of near certitude of the guilt of the accused. Unless each individual juror is convinced to a state of near certitude then you must return a finding of not guilty."

The court instructed the jury that the state bore the burden of proving every element of the crimes charged beyond a reasonable doubt. The court defined "reasonable doubt" as follows: "This phrase, reasonable doubt, has no technical or unusual meaning. You get the real meaning of the phrase if you emphasize the word reasonable. It is a doubt which is something more than a guess or a surmise. A reasonable doubt is not a doubt as is raised by one who questions simply for the sake of argument. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or in the absence of evidence. It is such a doubt as in serious affairs which concern yourselves you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance.

"Absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute

---

dismiss from your minds what they have said to you as to the law." Those instructions unambiguously instructed the jury that it was to follow the law provided by the court, not by counsel. "The jury is presumed to follow the court's instructions absent a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Ali*, 233 Conn. 403, 424, 660 A.2d 337 (1995).

certainty on the part of the jury before it returns a verdict of guilty. What the law does require, however, is that if, after hearing all the evidence, there is something in that evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt of the guilt of the defendant, then the defendant must be given the benefit of the reasonable doubt and be found not guilty. If you can, in reason, reconcile all of the facts and inferences which you find proven with any reasonable theory consistent with the innocence of the defendant, then, of course, you cannot find him guilty."

The defendant claims, as he did at trial, that the court inaccurately defined "reasonable doubt" because it did not instruct the jury that the state was bound to prove its case to a state of "near certitude" in the minds of the jurors.[4] The defendant claims that the court's charge "left the jury too much latitude in deciding this case" and that the court's "refusal to charge on near certitude amounts to a lowering of the burden of proof."

The defendant's claim that the court delivered an inaccurate instruction concerning reasonable doubt is of constitutional magnitude. See, e.g., *State* v. *Morant*, 242 Conn. 666, 686–87, 701 A.2d 1 (1997). "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding

---

[4] By filing a written request to charge that included that language, the defendant preserved the issue for our review. See Practice Book § 42-16. The record further reflects that the defendant took exception to the court's charge with regard to the issue.

them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003). "As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d. 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

The defendant claims that the "near certitude" instruction was mandated by *Jackson* v. *Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), or *State* v. *DelVecchio*, 191 Conn. 412, 419, 464 A.2d 813 (1983). The claim is without merit. Our Supreme Court has held that the "near certitude" instruction, while not an inaccurate statement of the law, is not mandated by those decisions. *State* v. *Ryerson*, 201 Conn. 333, 342, 514 A.2d 337 (1986).[5]

The defendant further argues that the court "spent a great deal of time telling the jurors what a reasonable doubt was not . . . . [The court] spent little time telling jurors what sort of doubt it was." Our examination of the reasonable doubt instruction reveals that it was comprised of statements that have been upheld by the appellate courts of this state as accurate statements of the law.[6] The defendant does not take issue with any specific statement included in the instruction and, therefore, we have no occasion to dissect the instruc-

[5] During oral argument before this court, the defendant's appellate counsel acknowledged that *Ryerson* was controlling precedent adverse to his claim.

[6] See, e.g., J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.8, pp. 38–40, and cases cited therein.

tion for analysis here. This court has observed that "[r]easonable doubt is a concept easily comprehended but difficult to define." *State* v. *Mussington*, 87 Conn. App. 86, 90, 864 A.2d 75, cert. denied, 273 Conn. 914, 870 A.2d 1084 (2005). Indeed, it has been observed that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles* v. *United States*, 103 U.S. 304, 312, 26 L. Ed. 481 (1881). The court adequately defined the term "reasonable doubt," and we reject the defendant's claim that any further explanation was necessary.

## III

The defendant next argues that the court improperly delivered an instruction concerning consciousness of guilt and failed to deliver a consciousness of innocence instruction. We disagree with both aspects of his claim.

## A

### Consciousness of Guilt Instruction

The court instructed the jury, in relevant part, as follows: "The law of our state recognizes a principle known as admission by conduct. Certain actions of a person may be considered by you to show a guilty knowledge or consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show his conduct subsequent to the alleged criminal offense which may fairly have been influenced by that act. Flight, when unexplained, may indicate consciousness of guilt if the facts and the circumstances support it.

"The state claims that the defendant fled from the scene of the crime immediately after the crime. There was also testimony that the police searched for the defendant before he turned himself in at the police station. If you find that the defendant did flee from the scene or did hide from the police following the commission of the crimes alleged, you may find that

such actions tend to show a guilty connection with the crime."

The record reflects that the defendant objected to that instruction immediately after the court delivered its charge. The defendant argued that the instruction was improper on the ground that it unfairly highlighted a "certain negative evidentiary inference." The court noted the defendant's exception. The defendant argues on appeal that the instruction was improper because it was not warranted by the evidence and that by instructing the jury as it did, the court, to some extent, compelled the jury to look favorably on the state's argument that he fled the scene of the alleged crime and that such conduct demonstrated a consciousness of guilt.

"The decision whether to give an instruction on flight, as well as the content of such an instruction, if given, should be left to the sound discretion of the trial court." *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998).

"[F]light, when unexplained, tends to prove a consciousness of guilt . . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . [Our Supreme Court] also has stated that [t]he fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . The probative value of flight as evidence of a defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt

concerning the crime charged to actual guilt of the crime charged." (Citation omitted; internal quotation marks omitted.) *State* v. *Scott*, 270 Conn. 92, 104–105, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). "It is appropriate for the jury to hear such circumstantial evidence and for the trial court to comment upon it." *State* v. *Hines*, supra, 243 Conn. 816.

We first consider the defendant's claim that there was an insufficient evidentiary basis for the instruction. The victim testified that after the defendant sexually assaulted her, she was able to leave his presence in her bedroom by telling him that she wanted to go to the kitchen to get something to eat. The victim testified that she dressed herself and fled to a neighbor's house where she called the police. Dean Benoit, an officer with the Meriden police department, testified that shortly after 4:10 p.m. on August 27, 2002, he responded to the home of the victim's neighbor, where he spoke with the victim concerning her complaint. Benoit testified that when he and other police officers went to the victim's residence shortly thereafter, they did not find the defendant at that place. Benoit further testified that at about 10 p.m. on August 27, 2002, the defendant appeared at police headquarters, "having heard through some people" that the police were looking for him in connection with "an incident." At that time, the defendant gave a statement to the police. Benoit testified that a police officer was stationed at the victim's residence, which she shared with the defendant, from the time that the police responded to the victim's complaint. The defendant did not return to the residence or present himself to police until he arrived at the police headquarters.

During closing argument, the prosecutor argued that the defendant's unexplained absence from the residence immediately after the incident demonstrated con-

sciousness of guilt. The prosecutor stated: "Why does [the defendant] leave the house and stay away for six hours? Everything was fine, according to him. He leaves the house, and he stays away for six hours because he's hoping to get away, he doesn't want to get caught. Then he finds out the police are all over town looking for him, and he thinks, I better turn myself in because getting arrested on the street would be a bad deal. He goes down and turns himself in."

Here, there was a reasonable view of the evidence that would support an inference that the defendant was conscious of his guilt to the extent that his conduct after the time of the alleged incident was motivated by a desire to evade apprehension. The fact finder would be warranted to draw such an inference. Under those circumstances, we conclude that the court was within its discretion in delivering the consciousness of guilt instruction.

Apart from challenging the evidentiary basis for the instruction, the defendant raises what is a much broader challenge to instructions concerning consciousness of guilt. The defendant does not argue that the instruction misled the jury. The court, by its instruction, drew attention to a permissible inference that the jury could draw from the evidence. The court neither commented favorably on the state's evidence nor suggested an inference that should be drawn therefrom.

The defendant recognizes that the prosecutor was "free to draw" the inference that the defendant's approximately six hour absence from his residence immediately after the time of the incident was circumstantial evidence of flight and, therefore, consciousness of guilt. The defendant argues, however: "It is difficult to see why the trial court felt obliged to entertain [the inferences] with the imprimatur of a charge." The defendant argues that equally plausible inferences, consistent

with his innocence, could have been drawn from the evidence, but that the court ignored those inferences.

Our Supreme Court has declined to bar instructions on consciousness of guilt and has recognized that the propriety of such instructions, where applicable, is well grounded in our jurisprudence. *State* v. *Figueroa*, 257 Conn. 192, 197, 777 A.2d 587 (2001). We are unable to revisit the issue here.

B

Consciousness of Innocence Instruction

After the court concluded its charge, the defendant's attorney objected in part on the ground that the court did not instruct the jury that it could consider the defendant's conduct, that he voluntarily presented himself at the police headquarters, as indicating a consciousness of innocence. The defendant's attorney asked, in light of the court's consciousness of guilt instruction, that the court "include an instruction along the lines of that, if a defendant voluntarily turns himself in . . . that the jurors may find and accept that as evidence consistent with innocence." The court declined to instruct the jury as requested and noted the defendant's objection.

The defendant did not request a consciousness of innocence instruction in his request to charge. The defendant did not support his request for such an instruction, after the court concluded its charge, with any citation to authority. The defendant also does not support the present claim of instructional error with any citation to relevant authority. Relevant precedent does not support the defendant's claim.

In *State* v. *Timmons*, 7 Conn. App. 457, 464, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987), the defendant requested a jury instruction that permitted the jury to infer his innocence from evi-

dence that he voluntarily surrendered to the police, along with the other facts of the case. The trial court did not charge the jury as the defendant requested and, on appeal, the defendant challenged the court's refusal to do so.[7] Id., 465. In rejecting the defendant's claim in *Timmons*, this court stated: "The surrender of an accused is a factual argument that may properly be made to a jury in summation of the evidence. It is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury. This court has been unable to find any authority allowing an instruction permitting the jury to infer innocence from surrender after flight." Id., 466.

This court rejected a similar claim of instructional error in *State* v. *Jennings*, 19 Conn. App. 265, 271–73, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). In *Jennings*, the defendant submitted a written request that the trial court instruct the jury, in relevant part, that "absence of flight from the scene of the crime or from police officers approaching may be considered a basis for an inference of innocence." (Internal quotation marks omitted.) Id., 271 n.2. This court held: "The failure to flee, like voluntary surrender, is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury." (Internal quotation marks omitted.) Id., 273.

Even in cases in which a defendant has explained his flight, an instruction that flight is circumstantial evidence of guilt need not be accompanied by a discussion by the court of the benign explanations for flight offered by the defendant. See, e.g., *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986). It was not improper

---

[7] The trial court in *Timmons* also instructed the jury "that flight was a form of circumstantial evidence which, when considered together with all the facts and circumstances of the case, may justify an inference of the accused's guilt." *State* v. *Timmons*, supra, 7 Conn. App. 464. This court upheld that instruction. Id.

for the court to decline to deliver an instruction that was contrary to the law. Accordingly, we reject the defendant's claim.

## IV

Last, the defendant claims that the court improperly precluded him from eliciting certain testimony concerning the victim. We disagree.

The record reflects that prior to the evidentiary phase of the trial, the state filed a motion in limine to preclude the defendant from introducing certain testimony from Gregory Bradley, an officer with the Meriden police department. Specifically, the state sought to preclude Bradley from testifying concerning the victim's reputation for truthfulness. During the defendant's case-in-chief, the defendant called Bradley to the witness stand, outside of the jury's presence, to make an offer of proof.

Bradley testified that the victim lived in an area that he patrolled and that he met her in connection with an incident in 1999 and in connection with her complaint in the present case in September, 2002. Bradley testified that during the course of his patrol duties, he spoke to residents who lived in the same area as the victim, but that he did not speak to any residents about the victim. Bradley testified, however, that he spoke with his fellow officers about the residents in his patrol area and that he had spoken with them about the victim after his interaction with her in 1999. Bradley testified that the victim's reputation among Bradley's fellow officers was that "she could be theatrical in how she presented her complaint to the police and how sometimes it would go unfounded or unsubstantiated through the experience of other officers." Bradley further stated that "knowing of [the victim] previously and what other officers have said, I was aware of the fact that sometimes she has lied to police."

During cross-examination by the state, Bradley testified that he could not recall which of his fellow officers had discussed the victim with him. Bradley also testified that he did not know the basis for the opinions expressed by his fellow officers. Bradley testified that he could not point to any police record or recall any specific incidents, apart from what he deemed to be a misrepresentation by the victim concerning the incident in question, that demonstrated the victim's lack of truthfulness.

The prosecutor argued that Bradley's testimony concerning the victim's reputation was inadmissible because it was based on statements from unnamed officers who were not part of the victim's community, there was no evidence of a precise time frame in which Bradley learned of the victim's reputation and there was no evidence of a factual basis to support the reputation opinion that he expressed. The court sustained the state's objection. The court stated: "The opinions and statements of this witness fail to state the reputation of the complainant for truthfulness in the community. It relates, at best, to some reports of some unknown officers with respect to reliability, but nothing more than that. It's far too vague. And, also, the information conveyed by this witness with regard to the complainant relates to an area of approximately 1999, which is far too remote in time  . . . ." The defendant's attorney subsequently offered Bradley's testimony not as reputation evidence, but as Bradley's personal opinion of the victim's truth and veracity. The court excluded the testimony for that purpose, as well.

The defendant claims that the court improperly precluded Bradley from testifying "as to his knowledge of the victim's reputation" of not being truthful. The defendant argues that the considerations relied on by the state in seeking to preclude the testimony pertained

"to the weight to be accorded the witness' testimony, not to its admissibility."

Evidence of the character of a witness for untruthfulness is admissible to impeach his or her credibility. Conn. Code Evid. § 4-4 (a) (3). "The credibility of a witness may be impeached . . . by evidence of character for . . . untruthfulness in the form of opinion or reputation. . . ." Conn. Code Evid. § 6-6 (a). A party seeking to present opinion testimony must demonstrate that its witness has had sufficient contact with the witness who is the subject of the opinion and, on the basis of such contact, has formed an opinion with regard to that person's truth or veracity. *State* v. *Gelinas*, 160 Conn. 366, 367–68, 279 A.2d 552 (1971). "Whether a witness has had sufficient contact with a person to be qualified to testify as to a particular character trait is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.) *State* v. *George*, 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). A party seeking to present testimony concerning a witness' reputation for truth or veracity must demonstrate that its witness has knowledge of another witness' "general reputation in the community at the time of the trial." *State* v. *Gould*, 241 Conn. 1, 20, 695 A.2d 1022 (1997). "Reputation evidence represents the community's belief as to the character or disposition of a person. . . . It may be elicited only from a witness who has had the opportunity to know, and who does know, the general reputation of the individual at issue. . . . It is within the trial court's discretion to disallow reputation evidence when the proponent fails to provide a sufficient foundation." (Citations omitted.) *State* v. *Bryant*, 17 Conn. App. 525, 529–30, 554 A.2d 1105 (1989).

The evidence presented demonstrated that Bradley responded to a complaint from the victim sometime in

1999 and did not have any further contact with her until September, 2002. Bradley could not recall any significant details concerning his contact with the victim in 1999 and indicated, with regard to his interaction with the victim in September, 2002, that the victim had made what he deemed to be a misrepresentation to him concerning the timing of events relevant to her complaint. The interaction between Bradley and the victim was limited to two specific instances, one of them occurring nearly four years prior to trial. On the basis of those isolated contacts, about which Bradley could recall almost no relevant details, we conclude that the court did not abuse its discretion in disallowing the opinion evidence for lack of a sufficient foundation.

The evidence further demonstrated that Bradley's knowledge of the victim's reputation for truthfulness and veracity was garnered from conversations with an undisclosed number of his fellow officers. Bradley could not recall the identity of the officers who had discussed this character trait with him or the basis for their observations concerning the victim. The time when Bradley learned of the victim's reputation was unclear, at best, occurring sometime after 1999 and prior to September, 2002. At most, the statements of a few of Bradley's fellow officers formed the basis of his purported knowledge of the victim's reputation in the general community. Bradley testified that he had not discussed the victim's reputation with anyone outside of his department. There is also no indication that the reputation evidence that Bradley relied on, from any community, was current as of the time of trial. On the basis of that evidence, we conclude that the court did not abuse its discretion in disallowing the reputation evidence for lack of a sufficient foundation.

The judgment is affirmed.

In this opinion the other judges concurred.